# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | Morton Denlow |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1904 | **DATE** | 8/8/2000 |
| **CASE TITLE** | Annamarie Quela, et al vs. Payco-General American Credits, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Report and Recommendation. The Court finds that there was no settlement of the Quela matter. All matters relating to the referral of this action having been resolved, the case is returned to the assigned judge.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | AUG 0 9 2000 | |
| | Notified counsel by telephone. | date docketed | 71 |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | 8/4/2000 | |
| ✓ | Copy to judge/magistrate judge. | date mailed notice | |
| DK | courtroom deputy's initials | ED-7 FILED FOR DOCKETING 00 AUG -8 PM 3:54 | DK mailing deputy initials |
| | | Date/time received in central Clerk's Office | |



| | |
|---|---|
| ANNAMARIE QUELA, SHELBY L. MIGNAULT, TABATHA IRVIN and MICHAEL HAKIM, <br><br> Plaintiffs, <br><br> v. <br><br> PAYCO-GENERAL AMERICAN CREDITS, INC. and OSI, INC., <br><br> Defendants. | Case No. 99 C 1904 <br><br> Magistrate Judge Morton Denlow |

DOCKETED
AUG 0 9 2000

TO: THE HONORABLE RUBEN CASTILLO
UNITED STATES DISTRICT JUDGE

## REPORT AND RECOMMENDATION

This matter comes before this Court pursuant to a referral from Judge Ruben Castillo for the purpose of determining whether there was a binding settlement agreement between plaintiff, Annamarie Quela ("Plaintiff" or "Quela") and defendants, Payco-General American Credits, Inc. and OSI, Inc. (collectively "Defendants" or "OSI"). The Court finds there was no binding settlement agreement. Among the factual questions which Judge Castillo asked to be resolved were the following: 1) Whether there was an offer? The answer is yes; 2) If so, who made the offer? The answer is Marshall Burt, counsel for Quela, offered to settle the Quela claim for $24,000; and 3) Whether the other party accepted? The answer is no.

On July 20, 2000, this Court conducted an evidentiary hearing at which time three witnesses testified: 1) Ellen Gorsuch ("Gorsuch"), OSI's Director of Compensation Services; 2) Beth T. Golub ("Golub"), counsel for OSI, and 3) Marshall Burt ("Burt"), counsel for Quela. The Court has carefully considered the testimony of the three witnesses who testified at the hearing, the exhibits introduced into evidence, the parties' briefs and the arguments of counsel. The following constitute the Court's findings of fact.

## I. FINDINGS OF FACT

### A. BACKGROUND FACTS.

1. This litigation involves an employment discrimination and sexual harassment claim brought by Plaintiff against OSI.

2. The litigation has been hard fought with a number of contested discovery disputes. The attorneys for the parties were distrusting of one another and failed to establish a good working relationship.

3. Gorsuch was OSI's primary client contact in connection with this litigation. She had authority on behalf of OSI to settle the litigation. Golub, a sixth year associate at Seyfarth, Shaw, Fairwether & Geraldson ("Seyfarth"), was working under the supervision of partner J. Stephen Poor ("Poor") in defending the litigation. Serving as Gorsuch's primary contact with respect to this lawsuit, Golub handled the discovery matters, court appearances and settlement negotiations.

4. Burt and attorney Andrew J. Cohen, who share offices in the same suite, worked together to represent Quela. Burt, who has practiced law since 1988, handled all settlement negotiations with respect to the Quela matter.

**B.    SETTLEMENT NEGOTIATIONS PRIOR TO MAY, 2000.**

5. On December 6, 1999, Burt sent a written settlement demand to Golub demanding $125,000 to settle the Quela claim.

6. On January 5, 2000, Gorsuch, Poor, Golub and Pete Pugal ("Pugal"), OSI's Vice President of Human Resources Services, participated in a conference call to discuss possible settlement of this litigation. During that conversation, OSI gave Golub authority to settle the Quela claim for an amount not exceeding $15,000.

7. On February 3, Golub sent Burt a letter offering to settle the Quela claim for $15,000.

8. On March 21, Golub and Burt participated in a settlement conference with Judge Castillo. In the conference, Judge Castillo recommended the Quela claim be settled for $30,000 and the claim of plaintiff, Shelby L. Mignault ("Mignault"), be settled for $18,000.

9. On March 23, Gorsuch, Golub and Pugal participated in a conference call to discuss the results of the settlement conference. During the conference call, Golub was authorized to settle the Quela and Mignault matters collectively for an amount not exceeding $46,000. Golub was given authority to decide how to divide the dollar amount between the two claims.

10. On March 28, Golub spoke to Burt following a court appearance and offered to settle both the Quela and Mignault claims for $45,000, stating that it was up to Burt to decide how to divide the money between his clients.

11. On March 29, Burt sent Golub a letter reducing Quela's settlement demand from $125,000 to $85,000. Golub responded to Burt by telling him that she would not entertain a settlement of the Quela claim unless it was closer to $30,000 as recommended by Judge Castillo.

C. **MAY, 2000 SETTLEMENT DISCUSSIONS.**

12. On May 10, Burt contacted Golub and told her that Quela was prepared to accept $30,000.

13. On May 10, Golub telephoned Gorsuch to inform her that Quela had offered to settle for $30,000. Golub recommended the offer be rejected because she felt Quela would accept less if they waited. Gorsuch agreed.

14. Golub rejected the $30,000 offer and informed Burt that he would need to bring Quela's demand closer to $22,500 in order for Gorsuch to accept.

15. On May 15, Burt told Golub that Quela would accept $27,000. Golub told Burt that this figure was too high and that he would need to come closer to $22,500 in order to settle. Burt suggested a dollar amount of $25,000 and asked Golub if she would recommend $25,000. Golub told Burt that she may recommend that amount to OSI, but first Burt had to commit Quela to that amount before Golub would discuss $25,000 with her client.

4

16. After consulting with his client on May 16, Burt called Golub and told her Quela would accept $25,000. Golub once again rejected the offer. Burt was frustrated and distrustful of Golub. Golub told Burt she would not recommend $25,000, but would recommend $24,000 if Burt would commit Quela to that number first. Burt said he would once again talk to his client.

17. On May 17, Burt called Golub to tell her Quela would accept $24,000. The Court finds Burt's version of this discussion to be credible and rejects Golub's assertion that she accepted a $24,000 offer from Burt. Golub told Burt she would check with her client and, if her client agreed, she would contact Burt and prepare the necessary settlement documents. Burt was again frustrated at Golub's refusal to immediately accept $24,000, a number which she had originally suggested. There was no agreement reached during this telephone conversation. Golub retained full flexibility to reject this number. Burt did not understand that an agreement had been reached and suspected that Golub would once again reject this offer.

18. On May 17, Golub left a voicemail message with Gorsuch asking her to call.

19. On May 19, after consulting with Quela, Burt delivered a letter to Golub withdrawing Quela's $24,000 offer. At no time prior to May 19 did Golub accept the $24,000 on behalf of OSI or ever prepare or deliver settlement documents to Burt regarding the Quela matter.

20. On May 19, Golub and Gorsuch spoke by telephone after Golub had received Burt's letter withdrawing the offer. They discussed whether settlements could be enforced against Quela, plaintiff Tabatha Irvin and plaintiff Michael Hakim.

21. Although Golub had the authority to settle the Quela claim on May 17 for $24,000, she chose not to settle the case at that time. Whether she wanted to discuss the matter with Gorsuch before accepting or whether she hoped to negotiate further is not important. The important point is Golub did not accept the $24,000 offer. There was no meeting of the minds and no settlement of the Quela matter.

22. This factual conclusion finds additional support in Golub's Affidavit. (Memo. In Support of Def. Mot. To Vacate, Ex. 1). In the affidavit, she refers to a discussion she had with Burt on May 19. With reference to the Hakim issue, she states: "I commented that the parties had already reached an agreement to settle Hakim's claim." (Par. 12). Identical language appears with respect to the Irvin claim. (Par. 24). No such language is used in connection with the Quela claim. Rather she states as follows: "After receiving the letter, I telephoned him and inquired as to the rationale behind it. He stated that he was communicating his client's wishes. He stated that the parties had not reached an agreement with respect to Quela's case." (Par. 31). She does not indicate that she disputed Burt's assertion that no settlement had been reached of the Quela claim.

## II. CONCLUSION

**There was no settlement of the Quela matter.** OSI has failed to prove by a preponderance of the evidence that the parties agreed to settle the Quela matter for $24,000.

Respectfully submitted,

_____
**MORTON DENLOW**
**United States Magistrate Judge**

**DATED: August 8, 2000**

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this notice. Failure to file objections with the specified time waives the right to appeal the Magistrate Judge's Report and Recommendation. See Fed. R. Civ. P. 72(b); 28 U.S.C. 636(b)(1)(B); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 329 (7th Cir. 1995); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258 (7th Cir. 1989).

**Copies Have Been Delivered in Open Court or Mailed to:**

Andrew Jay Cohen
Law Offices of Andrew Jay Cohen
77 West Washington Street
Suite 1306
Chicago, IL 60602
312/456-0234

Marshall J. Burt
Law Offices of Marshall J. Burt
77 West Washington Street
Suite 1306
Chicago, IL 60602
312/419-1999
**Attorneys for Plaintiff**


James Stephen Poor
Beth Tracey Golub
Seyfarth, Shaw, Fairweather & Geraldson
55 East Monroe Street
Suite 4200
Chicago, IL 60603
312/346-8000
**Attorneys for Defendants**