# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1904 | **DATE** | 11/2/2000 |
| **CASE TITLE** | Quela, et al. vs. Payco-General American Credits | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 11/17/2000 at 1:30 PM..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Court overrules OSI, Inc.'s objections and adopt the magistrate judge's report and recommendation.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | NOV 06 2000 date docketed | | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | docketing deputy initials | | 83 |
| | Copy to judge/magistrate judge. | | | |
| RO | courtroom deputy's initials | FD-7 FILED FOR DOCKETING 00 NOV -3 PM 1:31 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ANNAMARIE QUELA, SHELBY MIGNAULT, )
TABATHA IRVIN, and MICHAEL HAKIM, )
                            )

       **Plaintiffs,** )      No. 99 C 1904

                            )

       v. )      **Judge Ruben Castillo**

                            )

PAYCO-GENERAL AMERICAN CREDITS, INC. )
and OSI, INC., )
                            )

       **Defendants.** )

*DOCKETED*
*NOV 0 6 2000*

## MEMORANDUM OPINION AND ORDER

Plaintiffs Annamarie Quela, Shelby Mignault, Michael Hakim, and Tabatha Irvin filed

suit against Defendants Payco-General American Credits, Inc. and OSI, Inc. alleging Title VII

violations.[1]  We earlier found that two of the plaintiffs, Hakim and Irvin, entered into binding

settlement agreements with OSI.  (*See* R. 63, June 20, 2000 Mem. Order.)  It is undisputed that

Plaintiff Mignault and OSI's settlement discussions, however, did not result in a binding

agreement.  With regard to the fourth plaintiff, Quela, because we found that there were factual

questions that had to be decided before we could determine whether a valid settlement agreement

had been reached, we referred the case to Magistrate Judge Morton Denlow for an evidentiary

hearing.  The magistrate judge, in his report and recommendation, determined that there was no

binding settlement agreement between Quela and OSI.  Presently before the Court is Defendants'

Objections to Magistrate Judge Denlow's Report and Recommendation.  For the reasons stated

below, we overrule the objections.

---

[1] OSI acquired Payco in November 1996.  Therefore, we will refer to the defendants
collectively as "OSI."



# RELEVANT FACTS

Between December 1999 and March 2000, Quela's attorney, Marshall Burt, and OSI's attorney, Beth Golub, occasionally discussed settlement of Quela's claims. Because the figures proposed by each side were widely disparate, the negotiations during that time were fruitless.

A formal settlement conference was held on March 21, 2000, during which this Court recommended that the parties settle Quela's claims for $30,000. Following the conference, Golub spoke by telephone with Ellen Gorsuch, OSI's primary contact person with respect to the Quela litigation, and Pete Pugal, OSI's Vice President of Human Resources Services. Gorsuch and Pugal authorized Golub to settle the claims of Quela and Mignault for a combined total of $46,000. The manner of dividing the $46,000 between the two plaintiffs was left entirely within Golub's discretion and control. Further, Golub was not required to settle both plaintiffs' claims simultaneously; she could settle with one plaintiff alone so long as she remained conscious of the $46,000 combined limit.

On March 28, Golub orally offered $45,000 to Burt to satisfy both plaintiffs' claims. Burt responded with a letter, dated March 29, reducing Quela's former settlement demand to $85,000. Golub rejected the number and informed him that she would only consider demands approaching the $30,000 figure recommended at the settlement conference.

On May 10, Burt called Golub and proposed settling Quela's claim for $30,000. Golub refused, advising him that the figure needed to be closer to $22,500, perhaps $24,000 or $25,000, before OSI would accept. Burt indicated that he would so inform Quela. Following Golub's conversation with Burt, she called Gorsuch and told her that Quela had agreed to settle for $30,000. When Gorsuch asked why Golub did not accept, Golub replied that she thought that, if they waited, Quela would settle for less.

2

On May 15, Burt called Golub and suggested settling Quela's claim for $27,000. Golub again refused. Burt testified that he then asked Golub if OSI would settle for $25,000, and Golub told him that she might recommend that amount to OSI but only if Quela first agreed to the figure. (R. 78, Defs.' Objections Ex. A, Tr. of July 20, 2000 Hr'g ("July 20 Hr'g Tr.") at 121.) Burt then spoke to Quela, who approved the $25,000 demand. On May 16, Burt relayed the demand to Golub. Golub testified that she rejected the $25,000 figure but said to Burt "if you get [Quela] to [$]24,000, we have a deal." (*Id.* at 55.) In contrast, Burt testified that, after rejecting the $25,000 demand, Golub "said that she may recommend [$24,000] if [Burt] got [Quela] to that figure." (*Id.* at 122.)

Quela approved the $24,000 demand that day, and Burt informed Golub by telephone the next day, May 17. Golub testified that she responded "great, let me just double check with my client." (*Id.* at 58.) She further stated that once she confirmed the figure with her client, she would also prepare the written agreement. According to Golub, when Burt, expressing concern, replied, "Wait, I thought we had a deal," (*id.* at 58), she assured him that they did have a deal, that she only needed to confirm with her client. Golub stated that they then discussed in detail the terms of the agreement, which Golub would draft. (*Id.* at 59.) In contrast, Burt testified that, in response to his $24,000 demand, "[s]he said she would consult with her client, and she would get back to me. And if her client agreed, she would prepare a written settlement agreement." (*Id.* at 123.) Furthermore, Burt denied that they discussed the terms of the Quela settlement agreement. (*Id.* at 126-27.) Burt testified that he believed that Golub retained the power to reject his $24,000 proposal and, in light of their previous dealings, he anticipated her doing so. (*Id.* at 127.)

On May 19, Golub received a hand-delivered letter from Burt purporting to withdraw Quela's settlement demand. In addition, he advised Golub that Hakim also "[withdrew] his offer to resolve" his case and, further, he purported to repudiate Irvin's settlement agreement because the "agreement [had] not been accepted in writing by the defendants." (R. 56, Defs.' Mot. to Vacate and Amend Default J. Ex. F, May 19, 2000 letter from Burt to Golub.) Golub called Burt immediately and informed him that she intended to enforce all three settlements. In response, Burt expressly denied the existence of an agreement in the Quela matter and, in addition, maintained that OSI had not entered into enforceable settlement agreements with Hakim or Irvin.

Immediately following their conversation, Golub faxed a letter to Burt in which she enumerated the terms of the other two agreements but only cursorily addressed the alleged Quela agreement. Golub admitted at the evidentiary hearing that, at the time she sent the fax, she needed to perform additional research to determine whether the Quela negotiations had, in fact, culminated in an enforceable agreement. (R. 78, July 20 Hr'g Tr. at 65.)

In his Report and Recommendation, dated August 8, 2000, the magistrate judge expressly found Burt's version of the May 17 telephone conversation to be credible. Accordingly, the magistrate judge found that Golub at all times retained the unfettered ability to reject Burt's $24,000 proposal and, therefore, that she did not accept the proposal. In addition, the magistrate judge found that Golub's own affidavit supported his factual findings. In her affidavit, Golub failed to dispute Burt's assertion that no settlement had been reached in the Quela matter. Thus, the magistrate judge determined that the parties had not entered into a binding agreement to settle Quela's claim.

On August 22, OSI filed objections to the magistrate judge's report and recommendation asserting error on three main grounds: (1) the hearing testimony does not support the magistrate

4

judge's conclusion that the parties did not reach a binding settlement agreement; (2) the magistrate judge failed to properly consider binding precedent dispositive of the issues before him; and (3) the magistrate judge should have rejected Quela's attempt to repudiate her settlement agreement, in light of this Court's refusal to allow the other two plaintiffs to do so.

## ANALYSIS

### I. STANDARD OF REVIEW

A district judge may assign a magistrate judge to hear and determine pretrial matters not dispositive of a party's claim or defense. Fed. R. Civ. P. 72(a); 28 U.S.C.A. § 636(b)(1)(A). Within ten days of being served with a copy of the magistrate judge's decision, any party may file objections to the decision. Fed. R. Civ. P. 72(a). The district judge must consider the objections and modify or set aside any portion of the magistrate judge's decision that is clearly erroneous or contrary to law. *Id.* "The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997).

### II. SETTLEMENT AGREEMENT

#### A. Hearing Testimony

First, OSI argues that the hearing testimony does not support the magistrate judge's conclusion that Golub and Burt did not settle Quela's claims. OSI cites Golub's testimony that, in contrast with her previous conversations with Burt, on May 17, she "gave Burt assurances that they did in fact 'have a deal.'" (R. 78, Defs.' Objections ¶ 2 (citing July 20 Hr'g Tr. at 58-59, 98, 117).) Further, Golub testified that she and Burt discussed the terms of the settlement, that they

agreed that the terms would replicate Irvin's settlement agreement, and that she told him that she would prepare the appropriate documents. (*Id.*, July 20 Hr'g Tr. at 58, 117-19.)

According to Burt, however, Golub never accepted his offer to settle for $24,000. Instead, Golub told him that she would recommend his $24,000 proposal to OSI and get back to him, and, if OSI approved the figure, she would prepare the written agreement. (*Id.* at 123, 144.) Further, Burt flatly denied discussing the terms of the settlement and agreeing that the terms would mirror Irvin's settlement. (*Id.* at 126-27, 143.)

Golub and Burt were the only witnesses to their May 17 settlement discussion. In the face of direct conflict in their testimony, the magistrate judge had to decide which witness was credible. He chose Burt. (R. 77, Aug. 8, 2000 Report and Recommendation ¶ 17.) We are disinclined to disturb the magistrate judge's credibility assessments, because only he had the opportunity "to observe the verbal and nonverbal behavior of the witnesses[,] . . . [including their] reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements." *Kraushaar v. Flanigan*, 45 F.3d 1040, 1052-53 (7th Cir. 1995) (quoting *United States v. Nururdin,* 8 F.3d 1187, 1194 (7th Cir. 1993) (citations omitted).)

In addition, undisputed testimony regarding Golub's settlement tactics buttresses the magistrate judge's decision to adopt Burt's version of the May 17 settlement discussion. As the magistrate judge noted, Golub's negotiation strategy allowed her to maintain full control over the settlement negotiations by always requiring Burt to propose a settlement figure, leaving herself free either to accept the figure or reject it and suggest that he propose another. (R. 78, July 20 Hr'g Tr. at 158.) Golub used this strategy throughout the Quela negotiations, which first became serious when Golub suggested, on three occasions, specific dollar amounts for Burt to

recommend to his client. (*Id.* at 51-52, 55-57, 121-22.) Each time, once Burt responded with a demand consistent with Golub's suggestions, Golub rejected the demand and suggested a lower number. (*Id.*) Thus, when Golub did not immediately accept Burt's $24,000 demand and instead told him that she had to "double-check" with her client and would get back to him, she appeared to be continuing in her previously demonstrated course of responding to his proposals in a noncommittal, and, thus, nonbinding, way. (*Id.* at 94.)

Additional undisputed evidence shows that Golub's actions during the Quela settlement negotiations differed markedly from her actions in prior cases that she and Burt had settled successfully. For example, when Irvin's case settled, Golub had first checked with her client to receive express authorization and then agreed to Burt's $6,000 demand. (*Id.* at 109.) She did not tell Burt that she would have to double check with her client and then call him back. (*Id.*) Furthermore, she prepared and sent Irvin's draft settlement agreement to Burt the next day. (*Id.* at 100-01.) In Quela's case, however, Golub's response to Burt's May 17, $24,000 demand was a vague reference to "double checking" with her client, coupled with a complete lack of communication over the days that followed. Thus, Golub's behavior during and immediately following the May 17 settlement conversation did not indicate that she and Burt had entered into a binding settlement agreement.

The evidentiary hearing testimony supports the magistrate judge's conclusion that no settlement agreement was reached in the Quela case.[2] Because we do not find that the magistrate judge's factual findings were clearly erroneous, we adopt his conclusions as our own.

## B. The *Watson* Case

OSI next contends that the magistrate judge failed to properly consider *Watson v. Mobil Oil Corp.*, 132 F.3d 37 (7th Cir. 1997) (table), 1997 WL 764403 (7th Cir. 1997), which it claims is dispositive of the present case. Watson, the plaintiff, authorized his attorney to settle his case for "a few thousand dollars." *Id.* at *1. Subsequently, Watson's attorney agreed with Mobil's attorney to settle the claims for $7,500 but told Mobil's attorney that she would need to "double-check" with her client before finalizing the agreement. *Id.* at *2. Instead of relaying the final settlement amount to Watson, however, Watson's attorney proceeded with finalizing the agreement. *Id.* The district court found that the attorneys' agreement had bound Watson, denied reinstatement, and dismissed the case with prejudice. *Id.* at *1. The Seventh Circuit affirmed. *Id.* at *2.

_____

[2] The magistrate judge found additional support for his conclusion in Golub's affidavit, in which she states that she explicitly told Burt, in a May 19 telephone conversation, that the parties had reached an agreement to settle Hakim and Irvin's claims. Golub did not, however, make the same statement about the settlement of Quela's claims. (R. 77, Aug. 8, 2000 Report and Recommendation ¶ 22.) OSI argues that the magistrate judge erroneously relied on this omission in concluding that there was no binding settlement agreement. Golub explained, at the evidentiary hearing, that she had not addressed the validity of Quela's settlement in her affidavit because she needed to do additional research first. (R. 78, July 20 Hr'g Tr. at 65.)

We first note that the magistrate judge did not rely solely on this omission in Golub's affidavit in reaching his conclusion. Instead, he carefully weighed all of the relevant evidence and determined that Golub's affidavit was merely one additional piece of evidence to support his conclusion. Furthermore, Golub's research ultimately yielded *Watson v. Mobil Oil Corp.*, 132 F.3d 37 (7th Cir. 1997) (table), 1997 WL 764403 (7th Cir. 1997), which, as discussed below, is easily distinguished from the present case. (R. 78, Defs.' Objections ¶ 3.)

Although Watson's attorney's statement that she needed to "double-check" with her client before finalizing the settlement echoes Golub's words to Burt during their May 17 conversation, *Watson* can be distinguished for two reasons. First, because the attorneys in *Watson* appear to have been fully aware that they were bound at the time they agreed to settle for $7,500, the issue on appeal focused on the authority of Watson's attorney to settle for him. Here, the authority of Golub and Burt to settle for their clients is not at issue; the existence of an agreement, through offer and acceptance, is. Second, although Watson's attorney claimed that she needed to "double-check" the settlement with her client, she proceeded to act as though a binding settlement had been made. In contrast, neither Golub nor Burt's actions during the two days following their May 17 conversation exhibited a belief that they had settled Quela's case; they did not speak or write to one another about the putative agreement, and they did not exchange settlement documents. Thus, *Watson* is easily distinguished.

## C.    Effect of Enforcement of Other Plaintiffs' Settlement Agreements

Finally, OSI argues that the magistrate judge should have found an enforceable oral settlement agreement in Quela's case in light of this Court's refusal to allow Hakim and Irvin to repudiate their respective settlement agreements. (R. 78, Defs.' Objections ¶ 4.) Specifically, OSI asserts that the three plaintiffs simultaneously attempted to withdraw from settlement "in the hopes of enriching themselves" after the entry of default judgment against the defendants provided them with a considerable strategic advantage.[3] (*Id.*) Thus, OSI argues that, because this Court found enforceable agreements for Hakim and Irvin despite their attempts to repudiate,

---

[3] On May 17, we issued an opinion finding that agents of OSI had pressured an employee to produce written statements testifying falsely about facts critical to determining the viability of the plaintiffs' Title VII claims. We imposed a sanction of default judgment against the defendants, limiting the issue at trial solely to damages.

the magistrate judge should have rejected Golub's attempt as well because it was made "in the same spirit." (*Id.*)

OSI's argument overlooks the focus of our June 20, 2000 Memorandum Order. (R. 63.) Golub and Burt conducted each plaintiff's settlement negotiations separately, under factually distinct circumstances. Therefore, rather than enforcing all of the alleged settlement agreements based on the plaintiffs' apparent motives, we instead evaluated each set of negotiations individually upon its facts and under the lens of the legal theories applicable to those unique facts. Indeed, the very reason we referred the Quela matter to the magistrate judge for his consideration was because discerning the specific facts of the Quela negotiations was critical to determining whether a binding settlement agreement had been made. We therefore disagree with OSI's contention that the magistrate judge should have rejected Quela's attempt to withdraw from settlement simply because we refused to allow the other two plaintiffs to do so.

## CONCLUSION

For the foregoing reasons, we overrule OSI's objections (R. 78-1), and adopt the magistrate judge's report and recommendation, (R. 77-1).

This case is hereby set for a status hearing on November 17, 2000 at 1:30 p.m. for the express purpose of setting a firm date for a trial on the sole remaining issue of appropriate damages.

Entered:

**Judge Ruben Castillo**
**United States District Court**

**Dated: November 3, 2000**